**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

STEVE BOUTON, et al.,        )
         )
      Plaintiffs,       )
         )
     v.        )      Case No. 2:22-CV-00010-SPM
         )
STATE OF MISSOURI, et al.,     )
         )
      Defendants.     )

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Plaintiffs' Motion to Lift Bankruptcy Stay (Doc. 155) and Plaintiffs' Motion for Leave to File His First Amended Complaint (Doc. 156). Plaintiffs asked the Court to treat these motions as "emergency motions" in light of a June 3, 2026 deadline for filing claims that was set by the Bankruptcy Court. The Court set an abbreviated briefing schedule, Defendants filed responses, and the Court held a hearing. For the reasons stated below, both motions will be granted.

## I.    BACKGROUND

This matter arises from a July 9, 2019, incident in which Plaintiffs' son, Austin Bouton, died by suicide while in the custody of the Missouri Department of Corrections ("MDOC") at the Northeast Correctional Center ("NECC"). In the Amended Complaint, Plaintiffs bring a total of thirteen claims against nine defendants. The defendants fall into three categories: (1) the "State Defendants" (the State of Missouri, acting through MDOC; Anne Precythe, Director of MDOC; Alan Earls, Deputy Director of MDOC; Chantay Godert, warden of NECC; Dan Wiley, NECC correctional officer; and Keesila Ford, NECC correctional officer); (2) "Corizon" (Corizon, LLC, d/b/a/ Corizon Health, a healthcare provider that provides healthcare services at NECC); and (3)

– 1 –

the "Former Corizon Employees" (Cherilyn DeSouza, M.D., and Mary Summerville).

On February 13, 2023, Tehum Care Services, Inc., formerly known as Corizon Health, Inc., and Corizon, LLC, filed a bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of Texas, triggering an automatic stay of the claims against Corizon pursuant to 11 U.S.C. § 362(a). *See* Suggestion of Bankruptcy and Notice of Automatic Stay, Doc. 80. On May 16, 2023, pursuant to its inherent powers and with the agreement of all parties, this Court granted Plaintiffs' motion to stay the claims against the State Defendants and the Former Corizon Employees for 90 days. Doc. 93. Since that date, the Court has held periodic status conferences and has repeatedly extended this stay by agreement of all parties, with the understanding that Plaintiffs' claims against both Corizon and the Former Corizon Employees were likely to be addressed as part of a settlement in the Corizon bankruptcy proceedings.

On March 3, 2025, the Bankruptcy Court entered an "Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor" (the "Confirmation Order"). Pl.'s Ex. 4, Doc. 155-4. The "First Modified Joint Chapter 11 Plan of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor" (the "Plan") was incorporated into and attached to the Confirmation Order. *Id.* at pp. 58-129.[1] The Effective Date of the Plan was March 31, 2025. *See* Notice of Entry of (I) Confirmation Order, (II) Occurrence of Effective Date, (III) Administrative Claims Bar Date, and (IV) Other Claims Deadlines, Bankr. S.D. Tex., Case No. 23-90086, Doc. 2088 (March 31, 2025). The Plan provided for a settlement and release of claims against certain Released Parties (defined to include Corizon, its former employees, and several other entities and

---

[1] Plaintiff's Exhibit 4 contains multiple sets of page numbers. The Court refers to the page numbers of the 129-page electronically filed document.

individuals)[2] in exchange for a series of payments from certain entities (the "Settlement Parties"), to become effective on the date of the final payment. *Id.* at pp. 90-92.

The Plan also provided for a "Channeling Injunction," under which "all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts . . . ." *Id.* at p. 113. The Channeling Injunction was in effect as of the Effective Date. *Id.* at pp. 41-42. The Confirmation Order and the Plan further provided that the running of the statutes of limitations as to any Channeled Claim was tolled and extended and that in the event of the termination of the injunction, beneficiaries would "have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties." *Id.* at pp. 42-43, 91, 114. The parties appear to agree that Plaintiffs' claims against Corizon and the Former Corizon Employees in the instant action are Channeled Claims that were subject to this Channeling Injunction.

---

[2] "Released Parties" means collectively the following, in each case in its capacity as such with each being a "Released Party": (a) the Debtor; (b) Russell Perry, the Debtor's Chief Restructuring Officer; (c) the Committees and their respective members; (d) the Professionals; (e) the GUC Trustee; (f) the PI/WD Trustee; (g) the Settlement Parties; (h) M2 EquityCo LLC; (i) Valitás Intermediate Holdings Inc.; (j) Valitás Health Services, Inc.; (k) M2 Pharmacorr Equity Holdings LLC; (l) Pharmacorr/M2 LLC; (m) Pharmacorr Holdings LLC; (n) Endeavor Distribution LLC; (o) Yes Care Holdings LLC; (p) Sigma RM, LLC; (q) DG Realty Management LLC; (r) Scaracor LLC; (s) Yitzchak Lefkowitz a/k/a Isaac Lefkowitz; (t) Sara Ann Tirschwell; (u) Ayodeji Olawale Ladele; (v) Beverly Michelle Rice; (w) Jeffrey Scott King; (x) Jennifer Lynne Finger; (y) Frank Jeffrey Sholey; (z) FTI Capital Advisors, LLC, and for each Entity listed in (a) through (z), each of their respective current and former officers, directors, managers, employees, contractors, agents, attorneys, and other professional advisors, Insiders, and Affiliates; *provided, however*, that a Non-Released Party shall not be a "Released Party." Pl.'s Ex. 4, at p. 76. "Debtor" means Tehum Care Services, Inc., f/k/a Corizon Health, Inc. . . . ." *Id.* at p. 67.

The Plan set forth what would occur in the event that the Settlement Parties defaulted on the payment plan, stating:

> If a Settlement Payment Default occurs and is not cured within Settlement Payment Cure Period or waived in writing by both the PI/WD Trustee and GUC Trustee, **all Plan injunctions, stays, or releases provided in favor of the Released Parties that are in effect under the Plan shall be deemed terminated and void. All Statute of Limitations for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be tolled and extended to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction** if the Settlement Payment Default is not timely cured or waived in writing by both the PI/WD Trustee and the GUC Trustee. Notice of any waiver by the PI/WD Trustee and the GUC Trustee described in this paragraph must be filed on the docket for the Chapter 11 Case. **If the Settlement Payment Default is not timely cured or waived in writing, the Channeling Injunction will be terminated and the PI/WD Trustee and the GUC Trustee shall file a notice on the docket of the Chapter 11 Case and provide notice to beneficiaries of the Trusts that the Estate Party Settlement did not become effective and that such beneficiaries have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties.**

*Id.* at p. 91 (emphasis added).

In February of 2026, the Settlement Parties failed to make a required installment settlement payment and failed to cure the default. This triggered the trustees of the PI/WD and GUC Trusts to file a Notice in the bankruptcy case, stating:

> **PLEASE TAKE NOTICE THAT, AS OF MARCH 5, 2026, ALL PLAN INJUNCTIONS, STAYS, OR RELEASES PROVIDED IN FAVOR OF THE RELEASED PARTIES THAT WERE IN EFFECT UNDER THE PLAN ARE DEEMED TERMINATED AND VOID AND THE CHANNELING INJUNCTION AND ALL PROTECTIONS AFFORDED TO THE RELEASED PARTIES SET FORTH IN ARTICLE IX.I OF THE PLAN HAVE TERMINATED AUTOMATICALLY. SEE PLAN AT ART. IV.B.2 & ART. IX.I.5.**
>
> **PLEASE TAKE FURTHER NOTICE THAT THE ESTATE PARTY SETTLEMENT IS NO LONGER EFFECTIVE AND ALL BENEFICIARIES OF THE TRUSTS, INCLUDING WITHOUT LIMITATION, ALL HOLDERS OF CHANNELED CLAIMS HAVE NINETY (90) DAYS FROM MARCH 5, 2026, OR JUNE 3, 2026 TO COMMENCE CAUSES OF ACTION AGAINST THE RELEASED PARTIES. SEE PLAN AT ART. IX.I.6.**

Pursuant to the Confirmation Order and the Plan, the Channeling Injunction has terminated and all **Statute of Limitations** for all Claims and Causes of Action against the Released Parties held by the Debtor, the Estate, the PI/WD Trust, the GUC Trust, and Holders of Channeled Claims shall be **tolled** and **extended** to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction, or **June 3, 2026**.

Pl.'s Ex. 2, Doc. 155-2.

On May 12, 2026, Plaintiffs filed the instant motions, asking the Court (1) to lift the stay in this matter, and (2) for leave to file a Second Amended Complaint re-asserting the claims against the State Defendants, Corizon, and the Former Corizon Employees in the First Amended Complaint and adding additional claims against sixteen new defendants.

## II.    DISCUSSION

### A.  Plaintiffs' Motion to Lift Bankruptcy Stay

In the Motion to Lift Bankruptcy Stay, Plaintiffs request that the Court "enter an Order lifting the stay of this matter." Doc. 155, at p. 4. They argue that following the uncured default, "The bankruptcy stay (specifically the Channeling Injunction and all related Plan injunctions, stays, and releases) has . . . been lifted automatically pursuant to the express terms of the confirmed Plan and should be so recognized. No further Bankruptcy Court relief is required for Plaintiffs to now pursue their claims." *Id.* at p. 1.

As to the claims against the State Defendants and the Former Corizon employees, there is no dispute that the stay should be lifted. The State Defendants filed a response indicating that they have no opposition to this motion, Doc. 159, and the Former Corizon Employees file a response stating their position that Plaintiffs' case may continue as to them, Doc. 161, at p. 6. Upon review of the Confirmation Order and Plan, the Court agrees that any stay or injunction of the claims against the Corizon employees that was in place under the Plan has terminated, and the Court is unaware of any other authority that would require continuing the stay of these claims. Additionally,

– 5 –

in light of the parties' agreement that the stay should be lifted, the Court no longer believes a stay of the claims against the State Defendants or the Former Corizon Employees is warranted under its own inherent power to stay. For these reasons, the reasons stated in Plaintiffs' motion, and the reasons stated on the record at the hearing, the Court will grant the motion to lift the stay as to the State Defendants and the Former Corizon Employees.

Whether to lift the stay of the claims against Corizon itself, on the other hand, does appear to be in dispute.[3]  The Court first considers the nature of the stay or stays that are currently in place as to the claims against Corizon. The initial stay of the claims against Corizon was not put in place by this Court, nor was it put in place by the Confirmation Order or the Plan. Instead, it arose automatically pursuant to 11 U.S.C. § 362(a). No party has informed the Court of the current status of the automatic stay that was imposed by § 362(a). The Confirmation Order and the Plan both indicate that the automatic stay remained in full force and effect until the Effective Date of the Plan (March 31, 2025). *See* Pl's Ex. 4, at pp. 54-55 ("Unless otherwise provided in the Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of Bankruptcy Code or any order of the Bankruptcy Court and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date."); *id.* at p. 113 (same). Thus,

---

[3]  In the response opposing the motion to lift the stay, counsel for Corizon stated that he "no longer has any contact or an attorney-client relationship with Defendant Corizon Health, Inc. a/k/a Corizon, LLC, n/k/a Tehum Care Services, Inc. ("Corizon" or "Debtor") or its bankruptcy trustees" and that "the information set forth herein is based on his information and belief pursuant to a Status Report on Bankruptcy Proceedings filed by Tehum GUC Liquidating Trust on behalf of Corizon filed in the United States District Court for the Western District of Missouri in Case No. 2:22-cv-04191-MDH. (*See* Ex. A, Status Report)." *See* Doc. 161. Thus, it is somewhat unclear whether Corizon has a position on whether the stay should be lifted. The Court also notes that counsel for Corizon has subsequently indicated that it will soon be moving to withdraw as counsel in this case. If, in the future, Corizon disagrees with counsel's or the Court's characterization of its position, or with any aspect of the rulings set forth herein, Corizon may file an appropriate motion.

– 6 –

it appears that the automatic stay imposed by § 362(a) was effective only until March 31, 2025.

As the parties appear to agree, as of March 31, 2025, another stay was put into place by the Plan: under the Channeling Injunction, "all Persons that have held or asserted, currently hold or assert, or that may in the future hold or assert, any Channeled Claim shall be stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery from any Released Party with respect to any such Channeled Claim, other than from the Trusts . . . ." *Id.* at pp. 113. However, the Confirmation Order and Plan provide that in the event of an uncured settlement default, "all Plan injunctions, stays, or released provided in favor of the Released Parties that are in effect under the Plan shall be deemed terminated and void," *id.* at pp. 42, 91, and that holders of Channeled Claims will "have ninety (90) days from the date of termination to commence Causes of Action against the Released Parties." *Id.* at 42-43, 91. Here, it is undisputed that there was an uncured settlement default and that Corizon is included in the definition of Released Parties. Thus, the Court agrees with Plaintiffs that under the plain terms of these provisions, the uncured default terminated any stay that was in place in favor of Corizon under the Channeling Injunction or the Plan.

Corizon's position appears to be that there is a third type of stay in place pursuant to the Bankruptcy Code. *See* Doc. 161, at pp. 5-6 (citing 11 U.S.C. § 1141(d)(1) ("Except as otherwise provided in this subsection, in the plan or in the order confirming the plan, the confirmation of a plan—(A) discharges the debtor from any debt that arose before the date of such confirmation . . ."), & 11 U.S.C. § 524(a)(2) (a) ("A discharge in a case under this title . . . (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or

not discharge of such debt is waived . . . .")). Corizon argues that its inclusion in the definition of Released Parties under the Plan does not invalidate or override the discharge that was granted to Corizon pursuant to these provisions when the Plan was confirmed. Plaintiffs, on the other hand, argue that the discharge injunction is a creature of the Plan and Confirmation Order, which itself provided that the stay in favor of the Released Parties was terminated in the event of an uncured default.

Based on the information provided by the parties and the Court's own reading of the Confirmation Order and Plan, the Court is convinced that there is currently no stay in place as to the claims against Corizon. The statutory provision Corizon relies on provides that the confirmation of a plan discharges a debtor only "except as otherwise provided . . . in the plan or in the order confirming the plan . . . ." § 1141(d)(1). Here, although neither the Confirmation Order nor the Plan *explicitly* states that the Confirmation Order did not "discharge" Corizon, the Plan provides for a discharge of the Released Parties (which include Corizon) that does not occur until the final settlement payment is received. The Plan states, "**As of the Final Payment Date**[4] . . . all Consenting Claimants shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and **discharge each Released Party** of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor . . ." Pl.'s Ex. 4, at p. 92 (emphasis added). This indicates that the Confirmation Order alone did not fully discharge Corizon; such discharge was conditioned on a final payment that never occurred. Additionally, the Confirmation Order expressly permits Channeled Claims to go forward against the Released

---

[4] "Final Payment Date" means the date that the Final Settlement Payment is received by the Trusts. Pl.'s Ex. 4, at p. 70.

Parties (which include Corizon) in the event of a default, again indicating that the Confirmation Order did not immediately result in a discharge of such claims against Corizon. The Court thus finds that the Plan provides that Corizon's liabilities have not been fully discharged and that there is currently no stay in place under § 524(a).[5]

For the above reasons, the Court finds there is currently no stay in place as to the claims against Corizon, the Former Corizon Employees, or the State Defendants. Additionally, the Court has considered that if it does not promptly lift the stay and permit Plaintiffs to pursue their claims at this time, Plaintiffs will be prejudiced because it appears that the statute of limitations on Plaintiffs' claims has been tolled only until June 3, 2026—90 days after the Plan stay terminated. Accordingly, the Court will grant the motion to lift the stay in this matter.

### B.  Motion for Leave to Amend

In their motion for leave to amend, Plaintiffs state that the bankruptcy filings reveal that there are several individuals and entities that have unlawfully and illegally transferred assets from Corizon to themselves. Plaintiffs seek to assert the same 13 claims they asserted against the current defendants in the First Amended Complaint, and they seek to add three new counts against sixteen new defendants: Count XIV (successor liability); Count XV (piercing the corporate veil/alter ego); and Count XVI (fraudulent transfer). The current defendants have no objection to this motion.

As a preliminary matter, the Court notes that several of the new parties Plaintiffs seek to add are "Released Parties" under the Plan. For the reasons discussed above with respect to Corizon and the Former Corizon Employees, the Court finds that any stay of claims against these parties

---

[5] The Court acknowledges that in *Capital Eye Care, Inc. v. Tehum Care Services, Inc.*, 2:22-CV-4191-MDH (W.D. Mo.), the court continued a stay after receiving a status report from the Tehum GUC Liquidating Trust that advanced an argument similar to the one advanced by Corizon here. *See* Doc. 65 & Doc. 67. However, in that case, there was no opposition to continuing the stay.

that was imposed under the Plan has terminated and provides no barrier to the initiation of an action against them.

Under the Case Management Order, the deadline for motions for joinder of additional parties was August 1, 2022. Doc. 35, ¶ 2. A motion for leave to amend that is filed after the deadline for filing motions for amendment of pleadings has passed "implicate[s] both Rule 15(a) and Rule 16(b)." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008).

Under Rule 15(a)(2), "a party may amend its pleading only with the opposing party's written consent or the court's leave," and "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). For the reasons stated in Plaintiffs' motion and on the record at the hearing, the Court finds justice requires granting Plaintiffs' motion for leave to amend.

Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Court finds Rule 16(b)'s "good cause" standard has been satisfied. The matter has been stayed in its entirety since May of 2023, there was a stay in place as to several of the new defendants until very recently, and Plaintiffs state they only recently learned of the new defendants' actions through the recent bankruptcy filings.

For all of the above reasons, Plaintiffs' motion for leave to amend will be granted.

**III.   CONCLUSION**

For all of the above reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Lift Bankruptcy Stay (Doc. 155) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File His First Amended Complaint (Doc. 156), as supplemented by Doc. 166 and Doc. 166-1, is **GRANTED.** The Clerk shall enter Doc. 166-1 as the Second Amended Complaint in this case.

_____
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 2nd day of June, 2026.