**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | |
|---|---|
| STEVE BOUTON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>STATE OF MISSOURI, *et al.*,<br><br>Defendants. | Case No. 2:22-cv-00010-SPM |

**TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC./CORIZON, LLC'S STATEMENT REGARDING THE BANKRUPTCY PROCEEDING**

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc./Corizon, LLC (the "Debtor"), by and through Matthew J. Dundon, not individually, but solely in his capacity as the Wind-Down Officer (the "Wind-Down Officer") and in his capacity as GUC Trustee (the "GUC Trustee") of the Tehum GUC Trust (the "GUC Trust"), as appointed and formed pursuant to the Plan (as defined below) in *In re Tehum Care Services, Inc.*, Case No. 23-90086 (Bankr. S.D. Tex.) (the "Bankruptcy Case"), by and through their undersigned counsel, hereby files this *Statement Regarding the Bankruptcy Proceeding* (this "Statement") advising the Court and the parties on the status of the Bankruptcy Case and the Debtor's role in this proceeding. In support of this Statement, the Wind-Down Officer and GUC Trustee state as follows:

**RELEVANT BACKGROUND**

1. On February 13, 2023, Debtor commenced the Bankruptcy Case by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

2. On October 2, 2024, Debtor filed the *First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* [Bankruptcy Case, Docket No. 2014, Ex. B] (the "Plan").

3. On March 3, 2025, the Bankruptcy Court entered its *Order Confirming the First Modified Joint Chapter 11 Plan of Reorganization of the Tort Claimants' Committee, Official Committee of Unsecured Creditors, and Debtor* (the "Confirmation Order") [Bankruptcy Case, Docket No. 2014]. A true and correct copy of the Confirmation Order, which incorporates the Plan, is attached hereto as **Exhibit A**.

4. On March 31, 2025, the confirmed Plan became effective (the "Effective Date"). *See Notice of Entry of (I) Confirmation Order, (II) Occurrence of Effective Date, (III) Administrative Claims Bar Date, and (IV) Other Claims Deadlines* [Bankruptcy Case, Docket No. 2088].

5. As set forth in the Confirmation Order, upon the occurrence of "the Effective Date, the Debtor shall irrevocably assign, transfer, convey and deliver … all of [its] rights, title, and interest in and to all of the designated Trust Assets to the appropriate Trust." *See* Confirmation Order, p. 48.

6. The Plan provides that the Wind-Down Officer and GUC Trustee, as successors in interest to the Debtor, have the authority to act for the Post-Effective Date Debtor[1] as to certain tasks and obligations, including, without limitation, participating in matters such as the above-captioned proceeding in the limited capacity set forth in the Plan. *See* Plan, Article IV.F.1(e), (q).

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

**A. Settlement and Release**

7. Under the Plan, the Released Parties, which, as defined in the Plan, includes the Debtor and Settlement Parties,[2] were, among other things, to receive a release of all claims held by consenting claimants as of the Final Payment Date, *i.e.*, the date that the Final Settlement Payment was received by the Trusts (the "Consensual Claimant Release"). *See* Plan, Article IV.B.7.

8. In exchange for the Consensual Claimant Release and other releases and protections as set forth in the Plan, the Settlement Parties were to pay or cause to be paid the Settlement Payment in various installments to the Trusts. *See* Plan, Article IV.B.1.

9. In accordance with the Plan, the Trusts would then make distributions to holders of Channeled Trust Claims (defined below) using the Settlement Payments. Article III of the Plan provides that Holders of Allowed Channeled Claims are entitled to receive a distribution from the Trust Assets, and the Settlement Payments are Trust Assets intended to facilitate distributions to such claimants.

10. On the Effective Date, as to all claimants who did not opt out of the Consensual Claimant Release (thereby consenting to the Consensual Claimant Release), their claims against the Released Parties were channeled to the appropriate Trust (the "Channeled Trust Claims") to be dealt with by the respective Trust in accordance with the trust distribution procedures. *See* Plan, Article I.175; Article IX.I.2 ("As of the Effective Date, … the sole recourse of any Holder of a Channeled PI/WD Trust Claim that is eligible for compensation … shall be to and against the

[2] As defined in the Plan, "Settlement Parties" or "Settling Parties" "means, collectively, YesCare Corp., its wholly owned subsidiaries (including CHS TX, Inc.); Geneva Consulting, LLC; Perigrove 1018, LLC; Perigrove LLC; M2 HoldCo, LLC; M2 LoanCo, LLC; and PharmaCorr LLC." *See* Plan, Article I.A.182.

PI/WD Trust, … and … the sole recourse of any Holder of a Channeled GUC Trust Claim that is eligible for compensation … shall be to and against the GUC Trust[.]").

11. In addition, the holders of Channeled Trust Claims were subject to the Channeling Injunction, which serves as a bridge between the Effective Date and the Final Payment Date by "stay[ing], restrain[ing], and enjoin[ing]" claimants holding Channeled Trust Claims from taking any action against the Released Parties. *See* Plan, Article IX.I.2.

12. The Channeling Injunction and all protections afforded to the Released Parties are not absolute and would terminate automatically if a Settlement Payment Default occurred and was not cured within the Settlement Payment Cure Period or waived. *See* Plan, Article IX.I.5.

13. If the Channeling Injunction terminated, claimants holding Channeled Trust Claims would then have 90 days to commence or revive litigation against the Released Parties. *See* Plan, Article IV.B.2, Article IX.I.6; Confirmation Order ¶ 42.

**B. Settlement Payment Default**

14. As described above, the Plan required the Settlement Parties to make Settlement Payments in installments. After making several installment payments, the Settlement Parties failed to make the required payments in full due on or after August 15, 2025.

15. On February 1, 2026, to provide the Settlement Parties with the opportunity to cure the defaults, the Trusts entered into a Cure Agreement [Bankruptcy Case, Docket No. 2602 at Ex. A] (the "Cure Agreement") with the Settlement Parties. Although the Settlement Parties tendered the initial payment under the Cure Agreement, they defaulted almost immediately and failed to make the next installment payment due.

16. As a result, on February 25, 2026, the Trusts filed the *Notice of Settlement Payment Default and Settlement Payment Default Cure Notice* [Bankruptcy Case, Docket No. 2602-1 &

1955-4] and provided written notice to the Settlement Parties' counsel in accordance with the Plan that the Settlement Parties failed to make the installment payment and were required to cure the default by Wednesday, March 4, 2026. The Settlement Parties did not make the installment payment by this deadline.

17. Thus, on March 4, 2026, the Trusts filed a *Notice of Failure to Cure Settlement Payment Default; Automatic Termination of Channeling Injunction; and Deadline to Commence Causes of Action Against Released Parties* [Bankruptcy Case, Docket No. 2617] (the "Termination Notice").

18. Pursuant to the Confirmation Order and the Plan, as a result of the Settlement Payment Default, all Plan injunctions, stays, or releases provided in favor of the Released Parties were deemed terminated and void, and the Channeling Injunction terminated, and all Statutes of Limitations for all Claims and Causes of Action against the Released Parties were extended to the first Business Day that is ninety (90) days after the termination of the Channeling Injunction, or June 3, 2026.

## STATEMENT

19. Although the Channeling Injunction has terminated as to the Released Parties generally, this termination does not change the status of Channeled Trust Claims or the procedures for distributions by the Trusts.

20. Plaintiffs Steve Bouton and Kimberly Barton (the "Plaintiffs") did not opt out of the Consensual Claimant Release; accordingly, any claims Plaintiffs may have against the Debtor are Channeled Trust Claims and were channeled to the respective Trust to be dealt with pursuant to the trust distribution procedures. Plaintiffs may not pursue any Channeled Trust Claims against

the Debtor because all Channeled Trust Claims against the Debtor are resolved exclusively through the Plan.

21. However, because the releases are void and the Channeling Injunction has terminated, Plaintiffs, as holders of a Channeled Trust Claim, may pursue their claims against all other Released Parties. If necessary, Plaintiffs may name the Debtor, Tehum Care Services, Inc., as a nominal defendant and obtain a judgment against the Debtor *solely* for the purpose of establishing a factual or legal predicate for a Released Party's liability. Plaintiffs may not collect any judgment obtained against the Debtor from the Debtor outside the Plan process. Pursuing claims against the Debtor in any capacity other than as a nominal defendant for the purpose set forth above would be contrary to the Plan and in violation of the Confirmation Order.

22. As a nominal defendant, the Debtor is not required to respond, appear, or otherwise participate in this proceeding,[3] and files this pleading to state and affirm that status. Any such participation could be inconsistent with its nominal-defendant status and could risk forfeiture of that status. *See generally James v. Mejia*, 512 F. Supp. 3d 1255, 1259 (M.D. Ala. 2021) (finding that nominal-defendant insurer had become a party in interest rather than a nominal defendant by participating in the case); *Mt. Sinai Shopping Ctr., Inc. v. Liberty Mut. Ins. Co.*, No. 20-CV-46-PKC-SJB, 2020 WL 3526994, at *5 (E.D.N.Y. June 30, 2020) (holding that a party "cannot, on

---

[3] *See Augustine v. Target Corp.*, 259 F. Supp. 2d 919, 921 (E.D. Mo. 2003) (noting that nominal defendants are those "against whom no real relief is sought") (quoting *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 833 (8th Cir. 2002)); *Oliver and Co. v. Zamber*, No. 4:25-cv-00132-MTS, 2025 WL 1580288, at *5 (E.D. Mo. June 4, 2025); *accord* Nominal Party, *Black's Law Dictionary* (12th ed. 2024) ("[A] party who has some immaterial interest in the subject matter of a lawsuit and who will not be affected by any judgment, but who is nonetheless joined in the lawsuit to avoid procedural defects."); *see generally CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187, 192 (4th Cir. 2002) (holding that a nominal defendant is joined "purely as a means of facilitating collection" and no cause of action is otherwise asserted against a nominal defendant) (quoting *SEC v. Colello*, 139 F.3d 647, 676 (9th Cir. 1998)); *SEC v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) (holding that a nominal defendant is a party "without a real interest in the litigation"); *Bumberger v. Ins. Co. of N. Am.*, 952 F.2d 764, 767 (3rd Cir. 1991).

the one hand, be a nominal party and, on the other hand, inject [themselves] into the case, file pleadings, and make motions and other arguments to raise an interest in the case").

Dated: September 3, 2026.

Respectfully submitted,

**STINSON LLP**

*/s/ Nicholas J. Zluticky*

Nicholas J. Zluticky (MO #61203)
Zachary H. Hemenway (MO #59670)
1201 Walnut Street, Suite 2900
Kansas City, MO 64106
Telephone: (816) 842-8600
Facsimile: (816) 412-9731
Email: nicholas.zluticky@stinson.com
zachary.hemenway@stinson.com

*Counsel for the Wind-Down Officer and GUC Trustee*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that on September 3, 2026, the foregoing document and the attached exhibits were electronically filed with the court using the CM/ECF System, which sent notification to all parties of interest participating in the CM/ECF System.

*<u>/s/ Nicholas J. Zluticky</u>*
Counsel to the Wind-Down Officer and GUC Trustee